UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID NOLAN,

    Plaintiff,

v.

RONALD THOMAS,

    Defendant.
_____/

## **COMPLAINT**

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this complaint pending in this court, nor has any such action been previously filed and dismissed after having been assigned to a judge.

Plaintiff, by and through his undersigned attorneys, Mantese Honigman, P.C., states as follows for his Complaint against Defendant:

### **PRELIMINARY STATEMENT**

This is a dispute between business partners. Plaintiff David Henry Nolan, a resident of Australia, is an experienced entrepreneur. After meeting Defendant Ronald Thomas through an online investor forum, he traveled to Michigan to meet with Defendant about the possibility of going into business together. Plaintiff Nolan completed due diligence, including meeting with Plaintiff's bank representative, and the two ultimately elected to form a partnership whereby they

1

would jointly form a real estate investment venture. The business involved acquiring investment properties and rehabilitating and marketing them for lease and land contract arrangements. Plaintiff and Defendant agreed to split the profits between them 50/50. Defendant, due to his residency in Michigan, was the Managing Partner responsible for running most of the day-to-day business, and Plaintiff contributed capital, investors and business expertise. Their business relationship broke down when Plaintiff discovered that Defendant was misrepresenting and misreporting the company's real estate holdings and total assets and liabilities. In this suit, Plaintiff seeks a full accounting of the business assets and an award of monetary damages.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff David Henry Nolan is a British and Australian citizen. He resides in Brisbane, Australia.

2. Defendant Ronald Thomas is a U.S. citizen and a resident of Wyandotte, Michigan.

3. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 exclusive of interest or costs and the Plaintiff is a foreign citizen while the Defendant is a U.S. citizen domiciled in this judicial district.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the Defendant resides in this judicial district and a substantial parts of the events at issue occurred in this judicial district.

## FACTUAL BACKGROUND

5. Plaintiff David Henry Nolan is an experienced entrepreneur and investor. He has spent 25 years as a successful, professional financial planner and property developer.

6. Defendant Ronald Thomas resides at 3582 17th in Wyandotte, Michigan.

7. Plaintiff and Defendant met through an online forum for people interested in investment opportunities.

8. Defendant's background is in BMX biking. Before partnering with Plaintiff, he had limited experience with real estate investing and had only eight residential homes in his real estate portfolio, which he rented to tenants.

9. While he was exploring the possibility of going into business with Defendant, Plaintiff Nolan traveled to Michigan and visited with Defendant and his wife for a week, during which time the two discussed the potential business and looked at property so that Plaintiff could investigate the real estate market. Plaintiff also met with Defendant's bank manager to ensure that the business would be sound. [**Ex. 1**, 7.26.15 email]

10. On February 12, 2015, Defendant filed paperwork with the State of Michigan to create a new limited liability company, Thomas Nolan, LLC, intending that it would be the entity through which the two would conduct business. [**Ex. 2**, State Incorporation Records]

11. Plaintiff and Defendant ultimately agreed to go into business together effective October 2015. They called their venture Thomas Nolan ("TN,") the same name as the entity that Defendant had filed paperwork to create in February of 2015.

12. To document their initial investment, the two signed the Operating Agreement that Defendant had been using for his own business (Rise Above Asset Management LLC), which they agreed was only temporary.

13. Thereafter, instead of documenting their business relationship, the parties simply began operating the business as equal partners.

14. The parties agreed that Defendant would be the sole director of TN due to his residency in Michigan, but the two would be equal (50/50) partners and share decision-making power and split profits equally. [**Ex. 3**, 8.13.15 email regarding "50/50 split of profits"]

15. TN's business focused on residential real estate in Michigan. The company was able to purchase and successfully sell properties to residential buyers who could not qualify for traditional bank financing, by pairing a standard residential

lease agreement with an option to purchase. Defendant's expertise enabled him to develop a model for this business that was, unlike many similar ventures, both successful and fully compliant with United States banking laws such as Dodd-Frank.

16. Historically, lease purchase agreements have often attributed part of the option fee and rental amount towards the future purchase price, which by definition is a loan agreement and thus three or more agreements constitutes illegal trading. TN's "Fixed Price Guarantee" program, by contrast, offered renters the option to purchase the home at an agreed fixed price through an option to purchase, without entering into a lending arrangement.

17. Plaintiff Nolan shared his expertise with Defendant, his partner, so that both partners could grow TN's business.

18. Plaintiff invested capital into TN and funded his business expenses, including travel to the United States.

19. Plaintiff also raised AU$150,000 from one of his clients, which was loaned to TN for three years at 15 percent interest per annum.

20. Defendant invested $7,000 initially. He has claimed in financial reports that he loaned additional money to TN, but so far as can be determined, no loan documentation exists.

21. TN soon amassed 14 different residential properties. TN eventually added at least six additional properties, spending over $100,000 in business operation funds and reinvesting profits back into the business.

22. TN hired two people to help run the business, one to do basic renovation work and one to focus on selling.

23. Defendant told Plaintiff that because he was not a citizen, he could not sign many of the business agreements, and therefore Defendant would sign title documentation as the Managing Partner and provide accounts to the partnership.

24. The parties set up a website, Thomas-Nolan.com, to advertise the business.

25. Until about May of 2016, the parties operated a business arrangement whereby profits were supposed to be split 50/50. Defendant routinely provided financial and other business documentation to Plaintiff that purportedly reflected business assets and profits.

26. In the first quarter of 2016, Defendant became increasingly slow to generate business reports.

27. At the same time, Defendant told Plaintiff that he wanted to exit the business, and he proposed that Plaintiff agree to a payment of his share funded through a bank refinancing deal.

28. Defendant recognized that his partner Plaintiff is entitled to fifty percent of the value of the company. However, he tried to force Plaintiff to agree to an artificially low payout of his 50 percent interest through four deceitful ways:

   i. Defendant claimed that the business held only eight properties. That was false. In fact, Plaintiff conducted investigation and learned that Defendant had purchased several properties with company money that he had failed to account for in company documentation.

   ii. Defendant refused to report the total company assets to Plaintiff.

   iii. Defendant misrepresented the value of the properties held by the business, at least five of which are completely unencumbered by a mortgage.

   iv. In further effort to devalue the company and hide the truth of its assets and operations, Defendant contacted TN's web hosting company, GoDaddy.com, and arranged to have the business website taken down effective June 11, 2016.

29. As a 50 percent partner in TN, Plaintiff is entitled to a full and fair accounting of the company assets.

30. As a 50 percent partner in TN, Plaintiff is entitled to the value of 50 percent of the partnership's total assets, including real estate holdings, earning from the sale of any real estate holdings, lease income, valuable contracts, and any other income.

## COUNT I, BREACH OF CONTRACT

31. Plaintiff realleges all preceding paragraphs as set forth herein.

32. Plaintiff and Defendant agreed to carry on a business together as 50/50 business partners and did, in fact, create a partnership enterprise.

33. Plaintiff provided good and valuable consideration for the parties' contract in the form of, inter alia, capital, investment funding, time, business acumen, and his professional goodwill.

34. The parties performed under their agreement to operate as partners and share profits equally.

35. Defendant has recently purported to close the business and seize all business assets and income without compensating Plaintiff for his interest in the company.

36. As is discussed in further detail above, Defendant breached the parties' contract in myriad different ways, including but not limited to:

    (a)    Fraudulently and/or negligently failing to accurately account for partnership assets and income;

    (b)    Failing to share profits equally as agreed;

    (c)    Purporting to close and wind-up the business and keep all business assets without paying Plaintiff his rightful share;

    (d)    Refusing to distribute business profits to Plaintiff;

    (e)    Falsifying business asset reports in order to deceive Plaintiff about the true value of the business;

    (f)    Turning off the company website;

    (g)    Cutting off Plaintiff's communication with the business;

    (h)    Preventing Plaintiff from accessing his own partnership business.

37. Defendant's breaches of contract have prevented Plaintiff from receiving the benefits of the partnership contract, and Plaintiff has sustained significant and ongoing damages as a result.

WHEREFORE, Plaintiff respectfully requests that the Court award him monetary damages stemming from Defendant's breach of contract, plus costs, interests, attorney fees, and all other and further relief that this Court deems just.

## COUNT II
## BREACH OF FIDUCIARY DUTIES

38. Plaintiff realleges all preceding paragraphs as set forth herein.

39. Plaintiff and Defendant formed a business partnership.

40. As a partner in the business, Defendant undertook statutory and common law fiduciary duties. See, MCL § 449.21 et. seq.

41. Defendant also assumed fiduciary duties by serving as the Director and Managing Partner of the entity.

42. As a fiduciary, Defendant is required to account to the partnership for any benefit, and hold as trustee for it any profits derived by him without the consent of the other partners from any transaction connected with the partnership or from any use by him of its property.

43. As a partner, Defendant is obligated to make decisions about the partnership based on what is in the best interest of the partnership business and not convert corporate opportunities for his personal benefit.

44. Defendant has breached his fiduciary duties as set forth herein by, *inter alia*:

    (a) Failing to account to the partnership for benefits he has received in connection with the conduct of the partnership;

    (b) Diverting to himself real property holdings, profits, and other income derived from transactions connected with the conduct of the partnership or from use by him of the partnership's property;

    (c) Wrongfully diverting business opportunities belonging to the partnership;

    (d) Placing his personal pecuniary interests above the best interests of the partnership;

    (e) Utilizing the partnership assets and business relationships for illegitimate business purposes; and

    (f) Freezing his partner out of the business operations.

45. As a direct and proximate result of Defendant's breach of his fiduciary duties and abuse of the parties' partnership, Plaintiff has suffered and continues to suffer significant and ongoing damages.

WHEREFORE, Plaintiff respectfully requests that the Court award him monetary damages stemming from Defendant's breach of fiduciary duty, plus costs, interests, attorney fees, and all other and further relief that this Court deems just.

## COUNT III
## VIOLATIONS OF MICHIGAN UNIFORM PARTNERSHIP ACT

### (NALAMOTHU)

46. Plaintiff realleges all preceding paragraphs as set forth herein.

47. The parties formed a partnership subject to the Michigan Uniform Partnership Act.

48. Pursuant to MCL § 449.20, a partner must render on demand true and full information of all things affecting the partnership to any partner.

49. On multiple occasions, Plaintiff requested information relating to the partnership, yet Defendant failed to render true and full information of all things affecting the partnership.

50. Moreover, Defendant has failed to account to the partnership for any benefit or profits derived by him without the consent of his partner through the conduct of the partnership's business, as is required by MCL § 449.21.

51. Defendant has taken steps to unilaterally close the business and take possession of all business assets in violation of the parties' agreement and without providing Plaintiff with his rightful 50% share of the total value.

52. Defendant has taken no steps to meet any of his duties as a partner as required by the Michigan Uniform Partnership Act and by Michigan's common law.

53. Defendant has in multiple respects failed to meet the standard required of him as a partner, which is "not honesty alone, but the punctilio of an honor the most sensitive."

54. As a result, Plaintiff has sustained significant damages.

WHEREFORE, Plaintiff respectfully requests that the Court award him monetary damages stemming from Defendant's violations of the Michigan Uniform Partnership Act, plus costs, interests, attorney fees, and all other and further relief that this Court deems just.

## COUNT IV
## DEMAND FOR FORMAL ACCOUNT

55. Plaintiff realleges all preceding paragraphs as set forth herein.

56. Plaintiff and Defendant formed a partnership subject to the Michigan Uniform Partnership Act.

57. Pursuant to MCL § 449.22, a "partner shall have the right to a formal account as to partnership affairs" where, as here, the partner has been "wrongfully excluded from the partnership business or possession of its property by his copartners" and/or "as provided by section 21 [fiduciary duty section] and/or "other circumstances render it just and reasonable."

58. Plaintiff is entitled to a formal account of the partnership affairs for any one of the following reasons: Plaintiff has been wrongfully excluded from the partnership business or possession of its property by Defendant; Defendant has violated his statutory fiduciary duties as set forth herein; and circumstances render it just and reasonable.

WHEREFORE, Plaintiff respectfully requests that the Court order a formal account of the partnership affairs by ordering a forensic audit of Defendants' books and records, including but not limited to all documentation of real property transactions occurring at any time from the inception of the partnership business to the date of the audit, plus monetary damages stemming from Defendant's failure to disclose such information as required, costs, interests, attorney fees, and all other and further relief that this Court deems just.

## COUNT V
## FRAUD AND CONSTRUCTIVE FRAUD

59. Plaintiff realleges all preceding paragraphs as set forth herein.

60. In forming their partnership, the parties agreed that partnership profits would be shared equally.

61. Defendant made explicit representations to Plaintiff regarding business assets, real estate holdings and total profits which purported to reflect an accurate accounting of the partnership business by which the 50/50 split could be determined.

62. Defendant claimed, falsely, that the partnership owns only eight total properties.

63. Such representation was false when made, or, at the very least, made recklessly without knowledge as to the truth or falsity.

64. Defendant made such representation with the intention that Plaintiff would rely on it and accept less money for his share of the business than he is rightfully entitled to.

65. Defendant also created and distributed false accounting and business records in order to hide the assets and income from Plaintiff.

66. Such representations were false when they were made, or, at the very least, made recklessly without knowledge as to their truth or falsity.

67. Defendant made the representations with the intention that Plaintiff would rely on them, and accept payments of less than 50% of the actual profits generated by the partnership.

68. Plaintiff did rely on Defendant's false representations, and has sustained considerable damages as a result.

WHEREFORE, Plaintiff respectfully requests that the Court award him monetary damages stemming from Defendant's fraud, plus costs, interests, attorney fees, and all other and further relief that this Court deems just.

## COUNT VI
## UNJUST ENRICHMENT

69. Defendant realleges all preceding paragraphs as set forth herein.

70. As described above, Defendant has received considerable benefits from his relationship with Plaintiff, the retention of which would be inequitable and would create a substantial hardship for Plaintiff.

71. To the extent that Plaintiff and Defendant's relationship may be deemed not covered by an express contract, the circumstances mandate the implication of a contract to prevent Defendant's unjust enrichment at Plaintiff's expense.

72. Plaintiff has sustained losses as a direct result of, inter alia, Defendant's withholding of assets and income generated by the partnership.

73. In justice, the Court should award Plaintiff damages equal to the amount by which Defendant has been unjustly enriched.

WHEREFORE, Plaintiff respectfully requests that the Court award him monetary damages stemming from Defendant's unjust enrichment, plus costs, interests, attorney fees, and all other and further relief that this Court deems just.

Dated: June 16, 2016            Respectfully submitted,

MANTESE HONIGMAN P.C.
*Attorneys for*

By: /s/ Sara K. MacWilliams
Gerard V. Mantese (P34424)
Sara K. MacWilliams (P67805)
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200
(248) 457-9201 (fax)
gmantese@manteselaw.com
smacwilliams@manteselaw.com

## JURY DEMAND

Plaintiff, David Nolan, through his counsel, Mantese Honigman, P.C., demands a jury for all claims so triable.

Dated: June 16, 2016            Respectfully submitted,

MANTESE HONIGMAN P.C.
*Attorneys for*

By: /s/ Sara K. MacWilliams
Gerard V. Mantese (P34424)
Sara K. MacWilliams (P67805)
1361 E. Big Beaver Road
Troy, MI 48083
(248) 457-9200
(248) 457-9201 (fax)
gmantese@manteselaw.com
smacwilliams@manteselaw.com