# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

David Nolan,

|  |  |  |
|---|---|---|
| | Plaintiff, | Case No. 16-cv-12224 |
| v. | | Judith E. Levy<br>United States District Judge |
| Ronald Thomas, | | |
| | Defendant. | Mag. Judge Stephanie Dawkins<br>Davis |

_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART CROSS MOTIONS FOR SUMMARY JUDGMENT [81][87] AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND [106]

This case arises out of the fractured business relationship between defendant Ronald Thomas, a local real-estate investor, and plaintiff David Nolan, an Australian businessman. Plaintiff brings this suit alleging that defendant froze him out of their joint business, violating the Uniform Partnership Act and the duties partners owe each other in the course of running a business.

Both parties move for summary judgment, and plaintiff moves for leave to amend his complaint. For the reasons set forth below, the

summary judgment motions are denied in part and granted in part, and the motion for leave to amend the complaint is denied.

## I. Background

The parties' relationship began in July 2015, when they met for the first time in Las Vegas. (Dkt. 81-14.) Defendant followed up on their in-person meeting with an email laying out their business plan, suggesting that they would "split equity generated, cash profits from any transactions and any other positive cash flows 50/50." (*Id.* at 3.) Defendant also laid out the role that each party would take in the business: "I would see [plaintiff's] role as primarily arranging capital for projects, evaluating deals with me and of course continuing to fine-tune strategy and direction. My role would be overseeing everything here on the ground, initially evaluating deals and making sure the business stays on course[.]" (*Id.*)

In reply to this email, plaintiff generally agreed with defendant's plan, and suggested that he would come to Michigan "every 6 weeks or so as needed." (Dkt. 87-5 at 2.) In addition, on plaintiff's first visit the parties would "set up [their] LLC and associated accounts." (*Id.*) Plaintiff explained in his deposition that it was always their intent for the legal

structure of the entity to be an LLC. (Dkt. 87-2 at 5.) Instead of setting up a new LLC, the parties "agreed to use Rise Above Asset Management LLC, which [defendant] had already registered, with the view that we would register the name Thomas Nolan LLC." (*Id.*)

When, in an August 2015 email, plaintiff asked defendant what information he needed to set up the LLC, defendant replied that doing so was a "simple task" and that information about owners, officers, and directors would be spelled out in an operating agreement between the parties. (Dkt. 81-5 at 3.) Defendant followed through on this "simple task" and changed Rise Above Asset Management LLC's name to Thomas Nolan LLC on October 19, 2015; however, the parties never signed the operating agreement. (Dkt. 87-4.)

Meanwhile, the parties discussed the initial financing of the business. At the end of September 2015, they agreed that they would each contribute $7,000 as initial capital into the company's bank account. (Dkt. 87-24.) Defendant disputes whether plaintiff ever made this payment, alleging that, at most, plaintiff only paid $4,127.90. (Dkt. 87 at 12; Dkt. 87-9.)

From roughly September 2015, through March or April 2016, plaintiff and defendant operated their business buying, selling, and renting real estate. (*See, e.g.* Dkts. 87-10 (Nolan proposing investing/funding model for the business), 87-25 (parties discussing leads and initial purchases), 87-26 (same), 81-25 (discussing the plan for paying interest on a loan secured by plaintiff).) In February, 2016, plaintiff found a third party investor to put $150,000 Australian into the company. (Dkt. 81-25.) Also during that time, the parties engaged legal counsel to write the operating agreement mentioned previously. (Dkt. 81-20.) Defendant emailed plaintiff a final draft of this operating agreement on April 19, 2016, but it is not clear from the record why the parties never signed it. (Dkt. 87-14; *see also* Dkt. 87-21 at 3.)

At the end of March 2016, defendant began to be concerned with plaintiff's contributions to their business. He emailed plaintiff on March 30, 2016 regarding the imbalance between his investment – both capital and labor – and plaintiff's. (Dkt. 87-13.) In response, plaintiff expressed his willingness to find a solution to the imbalance, but offered various deferrals regarding his inability to find investors. (*Id.*) Six days later, on April 5, 2016, defendant wrote to plaintiff updating him on various deals

in progress and on the company's financial situation. (Dkt. 87-19.) In that email, defendant explained that in order to close on the next deal, both parties would need to make another capital contribution, in addition to the $11,350 contribution defendant placed in the company's bank account to keep it afloat in the meantime. (*Id.*) Plaintiff never made this contribution. (Dkt. 87-21.)

On May 13, 2016, defendant emailed plaintiff to suggest that they dissolve their business relationship. (Dkt. 87-21.) Defendant acknowledged that he "run[s] Thomas Nolan, which [he] own[s] 50% of," and suggested that "Thomas Nolan LLC sign a promissory note to [plaintiff] to pay [him] half of all cash flows (rents and sales) resulting from all 10 of the properties." (*Id.*) He also stated that plaintiff would be paid back for his entire investment. (*Id.*) Plaintiff then responded, demanding full immediate repayment of his investment, as well as a $300,000 payment representing his equity interest in the company. (*Id.*) In exchange, he would sign over all of his rights in Thomas Nolan, LLC to defendant. (*Id.*) After defendant then reminded plaintiff of plaintiff's failure to invest an additional $20,000 as needed to close on an upcoming property (*id.*), plaintiff replied with a long email reiterating his request

for reimbursement in full. (Dkt. 87-22.) On May 24 and May 29, the parties exchanged a final round of emails about the state of the company and information needed to wind it down. (Dkts. 81-8, 81-9.)

Plaintiff filed this lawsuit alleging the existence of a partnership and violations of the Uniform Partnership Act, among other causes of action, on June 16, 2016. On March 27, 2017, the Court issued an opinion and order granting plaintiff's motion to amend the complaint. (Dkt. 43.) Plaintiff's amended complaint re-pleaded his fraud and constructive fraud claims as two separate counts, but his attempt to add a conversion claim was denied as futile.

In addition, during the course of litigation, the Court appointed a receiver to manage the properties at issue and to provide an accounting of the parties' assets. (Dkt. 27.) The receiver returned his final report on November 30, 2017, which showed that ten of the fifteen properties at issue were owned by Thomas Nolan LLC. (Dkt. 85.) It also showed that every capital contribution made by either party went into the LLC eventually known as Thomas Nolan. (*Id.* at 20-22.)

The parties now bring cross motions for summary judgment. Plaintiff moves for partial summary judgment on counts II and III of the

first amended complaint for violations of the fiduciary duties partners owe one another and violations of the Michigan Uniform Partnership Act. (Dkt. 81.) Plaintiff's motion is for liability only and does not include damages. Plaintiff also moves for summary judgment on defendant's three counterclaims, for unjust enrichment, promissory estoppel, and fraud. Defendant cross-moves for summary judgment on all claims in plaintiff's complaint. (Dkt. 87.)

## II.    Legal Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may not grant summary judgment if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (citing *Skousen v. Brighton High Sch.*, 305 F.3d 520, 526 (6th Cir. 2002)).

## III. Analysis

### a. Standing

To start, defendant argues that plaintiff does not have standing to bring his claims inasmuch as they seek to recover funds a third party investor loaned to plaintiff. Defendant asserts that the third party investor is the actual party in interest with respect to these funds, not plaintiff, and, thus, plaintiff cannot bring these claims.

This argument lacks merit. A plaintiff has standing to bring a claim when he can demonstrate that he was (1) injured, (2) the defendant caused the injury, and (3) the court can provide a remedy that redresses the injury. *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560 (1992).

Here, defendant argues plaintiff was not actually injured when he did not recover the funds loaned by the third party because only the third party suffered the injury. However, there is no indication from the pleadings or briefing that plaintiff is asserting the claim on behalf of the third party. Instead, plaintiff brings his claims to remedy an injury he suffered when he did not recover the funds he invested in his business relationship with defendant. It does not matter that plaintiff obtained those funds from a third party because, once given to him, they were his

funds until repaid. Accordingly, losing those funds was an injury sufficient to establish standing.

The second and third elements of standing are also satisfied here. Plaintiff alleges he was unable to recover the funds as a result of defendant's malfeasance, and, if the Court were to find in his favor, it could issue a judgment for damages that would compensate for his losses.

For these reasons, plaintiff has standing to pursue this case.

### b. Existence of a Partnership

Plaintiff alleges defendant breached the parties' contract to carry on as fifty-fifty partners, failed to adhere to the fiduciary duties partners owe to each other, and violated various provisions of Michigan's Uniform Partnership Act. (Dkt. 44 at 7-11 (Counts I-III of the First Amended Complaint).) These three claims all depend on the existence of a partnership, and can only succeed if one is found to exist. Plaintiff argues judgment should be entered in his favor because the parties' business relationship and dealings were sufficient to form a partnership. Defendant counterargues that they could not have formed a partnership because plaintiff failed to meet various conditions precedent required to become part of defendant's business.

After the parties submitted their briefs on the motions, the Court ordered supplemental briefing on the partnership issue. (Dkt. 102.) The order asked the parties to address the applicability of Mich. Comp. Laws § 449.6(2), which bars the existence of a partnership when a different corporate form is present. In the supplemental briefing, defendant argues that under Michigan law a partnership and an LLC are mutually exclusive corporate forms, and, accordingly, one entity cannot be both a partnership and an LLC at the same time. (Dkt. 104.) Plaintiff responds by arguing that plaintiff was a member of defendant's LLC because of his investment,[1] and, in the alternative, that the LLC was improperly formed and thus a partnership existed. (Dkt. 105.)

Michigan implemented the Uniform Partnership Act of 1917 ("UPA"), a law adopted by a number of states around that time to "make uniform the law relating to partnerships." *See* Mich. Comp. Laws Ann. § Ch. 449, Refs & Annos (West); *see also Byker v. Mannes*, 465 Mich. 637,

---

[1] Plaintiff spends the vast majority of his brief laying out this argument, but, ultimately, it has no bearing on the outcome of this case. Even if the Court accepts plaintiff's argument that he was a member of defendant's LLC, it provides plaintiff no relief because he asserts no claims that turn on whether he was a member of an LLC. Instead, plaintiff's fiduciary duty and accounting claims are brought for violations of the Michigan Uniform Partnership Act. (Dkt. 44 at 7-11.)

644 (2002). This statute defines a partnership as "an association of 2 or more persons . . . to carry on as co-owners a business for profit." Mich. Comp. Laws § 449.6(1). It also disclaims as a partnership "any association formed under any other statute of this state." Mich. Comp. Laws § 449.6(2). The UPA's drafters included comments explaining the various provisions of the act, and those comments make clear that "[s]ubsection (b) provides that business associations organized under other statutes are not partnerships. Those statutory associations include corporations, limited partnerships, and limited liability companies." Uniform Partnership Act of 1997 § 202 (Comment 2).[2] "[G]eneral partnership is the residual form of for profit business association, existing only if another form does not." *Id.*

Michigan law expressly precludes the existence of a partnership in this case because the parties conducted all of their business through an LLC. There is ample evidence in the record indicating that the parties' LLC – first called Rise Above Management LLC, and later changed to Thomas Nolan LLC – was the primary vehicle for their business.

---

[2] Although Michigan's legislature did not adopt the amendment to the UPA, the Michigan Supreme Court has explicitly held "that MCL § 449.6 is consistent with that amendment." *Byker*, 465 Mich. at 645.

For example, in plaintiff's deposition, defendant's counsel asked plaintiff about his understanding of the structure of the business he was forming with defendant. (Dkt. 87-2 at 5.) Plaintiff responded "[i]t was supposed to be an LLC. We, from memory as I sit here today, agreed to use Rise Above Asset Management LLC, which Ron had already registered, with the view that we would register the name Thomas Nolan LLC . . . ." (*Id.*) The Articles of Organization for this LLC, as well as the amendment changing its name, are part of the record in this case. (Dkt. 87-4.) Further, the Court-appointed receiver reported that all of the funds plaintiff contributed to the alleged partnership were deposited directly with the LLC, and that each of the disputed properties was either purchased using an LLC, or directly by defendant outside of the parties' business relationship. (Dkt. 85.)

Michigan courts have not yet interpreted the language of § 449.6(2), but courts in other states have interpreted substantially similar provisions of their own state laws. In those cases, the courts found that evidence of a non-partnership corporate form precludes the existence of a partnership. Defendant relies on two such cases: *Vortex Corp. v.*

*Denkewicz*, 235 Ariz. 551 (Ct. App. 2014) and *Chevalier v. Woempner*, 172 Wash. App. 467 (2012).

In *Chevalier*, the Washington Court of Appeals explained that under a partnership statute similar to Michigan's, "it is irrelevant whether the parties intended to use the corporate form merely as a medium for representing their partnership because [the statute] provides that once an association has been formed under another statute, that association is not a partnership." *Chevalier*, 172 Wash. App. at 479. This case is nearly identical. Plaintiff's position is that he and defendant formed a partnership to operate Thomas Nolan LLC, the entity that eventually purchased the properties that were the subject of the business. But, since the LLC existed at all times during the parties' relationship and the parties used it to conduct all of their business, their relationship could not have been a partnership. An LLC is formed under a different statute than a partnership, and "once an association has been formed under another statute, that association is not a partnership." *See id.*[3]

---

[3] Plaintiff attempts to distinguish *Chevalier* by suggesting that the court did not evaluate the evidence of partnership formation "because it concluded the operative document was a sale document that merely conveyed an option, which was never

*Vortex Corp.* similarly supports defendant's position. There, the Arizona Court of Appeals held that "because the parties were already working together through a corporate association and an LLC association" their relationship was not that of partners. *Vortex Corp.*, 235 Ariz. at 557. Indeed, the Arizona statute, which is nearly identical to Michigan's, only "create[s] a partnership when the parties do not already have an established form of business entity or association." *Id.*

The facts here are similar. Plaintiff's initial investment in the venture went directly into the LLC, and that LLC went into operation by purchasing most of the properties identified in the receiver's report. (Dkt. 85 at 20-21.) The business never existed independent of the LLC. For that reason, the "parties were already working together through . . . an LLC association" and thus a partnership could not exist. *See Vortex*, 235 Ariz. at 557.

Plaintiff argues that *Vortex* is distinguishable because, there, the parties' business relationship pre-dated the alleged formation of a partnership. But here, plaintiff and defendant never operated their

---

established at trial." (Dkt. 105 at 5.) This argument fails because, here, the existence of the LLC, on its own, precludes the existence of a partnership, making any evaluation of the evidence of partnership formation irrelevant.

business in any way that was separate from the LLC. For plaintiff's argument to succeed, the parties would have had to start their operations prior to forming the LLC, but there is no evidence that is the case. (*See* Dkt. 85 at 20-21 (cataloguing each of plaintiff's investments and showing that they all went to Rise Above Asset Management LLC or Thomas Nolan LLC).)

In all, the evidence shows that plaintiff and defendant had a business relationship that operated through an LLC. This relationship obligated each with a duty of care to the other. *See generally Bromley v. Bromley*, No. 05-71798, 2006 WL 1662552 (E.D. Mich. Jun. 7, 2006). However, because plaintiff and defendant's business involved operating an LLC, they could not have formed a partnership. *See* Mich. Comp. Laws § 449.6(2). Absent a valid partnership, plaintiff is not entitled to recovery on his claims for breach of a partnership contract, breach of partnership fiduciary duties, and violation of the Michigan Uniform Partnership Act. Accordingly, summary judgment is granted to defendant on Counts I (breach of contract to form a partnership), II (breach of fiduciary duties owed in a partnership), and III (violation of the Michigan Uniform Partnership Act) of the First Amended Complaint.

c. Plaintiff's Fraud Claim

Counts IV and V of plaintiff's complaint allege fraud against defendant, and defendant moves for summary judgment on those counts.

Defendant claims there is no evidence in the record indicating that fraud occurred, and the fraudulent activity plaintiff identifies in his complaint – such as the sale of one property at a price below asking and defendant's failure to sign the LLC operating agreement – has innocent explanations. (Dkt. 87 at 25-26.)

Plaintiff counters by presenting the affidavit of an accountant who points out a series of accounting irregularities regarding the Thomas Nolan LLC bank account. (Dkt. 93-3.) The accountant identifies as fraudulent a number of payments Thomas Nolan LLC made to defendant under allegedly suspicious circumstances, including withdrawals of funds "wrongfully deposited in this account" for which there is no evidence of an initial wrongful deposit; a lack of disbursements of returns on investment to plaintiff; and the repayment of two loans for which there was no initial deposit of loan funds in the Thomas Nolan LLC bank account. (*Id.*) Plaintiff also cites a discrepancy between the number of properties defendant represented that the company owned and the

number of properties found in the first receivership report. (Dkt. 93 at 21.)

Under Michigan law, a plaintiff claiming fraud must show:

(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463, 477 (2003) (quoting *M & D Inc. v. McConkey*, 226 Mich. App. 801, 806 (1997)).

Plaintiff cannot demonstrate an issue of material fact precluding summary judgment on his fraud claim. Even though plaintiff's accountant has identified irregularities in the management of the Thomas Nolan LLC bank account, such conduct is not fraud under Michigan law.

The essence of this type of fraud claim is that the defendant knowingly misrepresented something material to the plaintiff in order to induce the plaintiff's reliance. When plaintiffs prevail in fraud cases, they do so in the face of clear evidence that the defendant was aware of some

material fact and still misrepresented it in order to induce the plaintiff to take some course of action.

For example, in *Electric Stick, Inc. v. Primeone Insurance Co.*, the Michigan Court of Appeals held a party liable for fraud where it failed to disclose each of the bankruptcy proceedings in which it was involved for the preceding five years on an application for an insurance policy. *Elec. Stick, Inc. v. Primeone Ins. Co.*, No. 327421, 2016 WL 4954423, *2 (Mich. Ct. App. Sept. 15, 2016). The owner of the party held liable "conceded during his deposition that he was indeed aware of the multiple bankruptcy proceedings . . . and could not give a plausible explanation regarding why this information was not provided" in the application. *Id.* This material misrepresentation was fraudulent because the counter-plaintiff insurance company relied on the counter-defendant's representations about its financial health in deciding to issue it an insurance policy. *Id.*

Similarly, in *Demil v. Demil*, a divorce case in which the court was tasked with distributing the proceeds of a tax refund from a joint filing, the Michigan Court of Appeals held that the defendant perpetrated fraud when the plaintiff stated on the record that she believed the refund was

worth $2,300, and the defendant did not correct her, despite having already received a $34,000 refund from the IRS. *Demil v. Demil*, No. 323205, 2015 WL 6161801, *6 (Mich. Ct. App. Oct. 20, 2015). The plaintiff relied on the defendant's stated valuation of the tax refund in entering a consent agreement to resolve their divorce. *Id.*

Here, plaintiff does not make a similar evidentiary showing. He has not clearly identified the material misrepresentation defendant made, pointed to any evidence indicating that defendant intentionally or recklessly made a false statement, nor demonstrated that he relied on the false statement. Reading the motion in the light most favorable to plaintiff as the non-moving party, it is possible that plaintiff seeks to argue that there are two material misstatements: (1) that the books and records showed only eight joint properties despite the receivership report showing fifteen, and (2) that the various disbursements from the Thomas Nolan LLC bank account were for the reasons stated. (*See* Dkt. 93 at 21.)

Premising a fraud claim on these two statements runs into two problems. First, plaintiff does not point to any evidence that these representations were intentionally or recklessly false when made. With respect to the alleged misreporting of properties in the company's

records, the Court appointed a receiver to resolve a good faith dispute between the parties regarding which properties were part of their business. At the most, there is evidence of a question of fact as to the truth of that representation based on the receiver's report, but plaintiff has not carried his burden of bringing forth evidence of defendant's intent to mislead. Similarly, there is no evidence that the statements surrounding the disbursements from the Thomas Nolan LLC bank account were intentionally false. Plaintiff's only evidence on this issue is his own accountant's affidavit. (Dkt. 93-3.) That affidavit identifies the allegedly improper transactions, but it cannot speak to defendant's intent, nor does it.

The second issue regarding these two statements is that plaintiff did not "act[] in reliance upon" them. *See Belle Isle Grill Corp.*, 256 Mich. App. at 477. Unlike in *Electric Stick*, where the insurance company relied on the material misrepresentation in deciding to issue a policy, defendant's alleged misrepresentations did not cause plaintiff to engage in any course of action. In fact, both of these statements occurred after the parties' business relationship was underway, and, for that reason, it

is not clear how plaintiff could have acted in reliance upon them. Absent a showing of reliance, plaintiff's fraud claim cannot go forward.

To be fair, plaintiff's accountant does appear to have identified irregularities in defendant's management of Thomas Nolan LLC's bank account. The receiver and plaintiff's accountant agree that Thomas Nolan LLC repaid two loans to defendant's wife and personal friend despite no evidence of the loan funds ever having been deposited in the company's bank account. Similarly, defendant made two withdrawals of funds "wrongfully deposited in this account" even though there is no record of the initial wrongful deposit. However, this conduct is not fraud as defined by the Michigan courts. It may violate the duties owed by an officer of an LLC to the shareholders or investors, but there is no such claim in this case.

In sum, plaintiff has not carried his evidentiary burden on his fraud claim because he has not pointed to any evidence in the record that would demonstrate that the relevant statements were intentionally false or that he relied upon them. Accordingly, summary judgment is granted for defendant on plaintiff's fraud claim.

d. Defendant's Counterclaims

Plaintiff moves for summary judgment on defendant's counterclaims. Defendant asserts three counterclaims against plaintiff: unjust enrichment, promissory estoppel, and fraud. Because there is no evidence in the record to support any of his theories of recovery, summary judgment for plaintiff is warranted on each counterclaim.

i. *Unjust Enrichment*

To make out a claim for unjust enrichment, a plaintiff must demonstrate "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)). "Where the elements of unjust enrichment are established, 'the law will imply a contract in order to prevent unjust enrichment.'" *Cooper v. Dean*, No. 283244, 2010 WL 1223160, at *6 (Mich. Ct. App. Mar. 30, 2010) (quoting *Belle Isle Grill Corp.*, 256 Mich. App. at 478).

Defendant alleges the benefit plaintiff gained from the parties' business dealings is "valuable insight into the local real estate market as well as proprietary information concerning defendant's business." (Dkt.

91 at 22.) However, this benefit is not sufficiently tangible to recover for unjust enrichment. Even if it is, defendant makes no argument as to why plaintiff's retention of this knowledge is inequitable in light of the money plaintiff invested in the parties' business relationship. *See Matar v. Joobeen*, No. 274669, 2008 WL 466857, *5 (Mich. Ct. App. Feb. 21, 2008) (requiring accounting evidence of an inequity more substantial than the parties' stipulated accounting numbers to find for plaintiff on his unjust enrichment claim).

Summary judgment is granted for plaintiff on this claim.

ii. *Promissory Estoppel*

The elements of a promissory estoppel claim are

> (1) a promise; (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee; (3) which in fact produced reliance or forbearance of that nature; and (4) in circumstances such that the promise must be enforced if injustice is to be avoided."

*Schipani v. Ford Motor Co.*, 102 Mich. App. 606, 612–13 (1981), *disapproved of on other grounds by Ferrett v. Gen. Motors Corp.*, 438 Mich. 235 (1991). This doctrine is "cautiously applied," and its "sine

qua non . . . is a promise that is definite and clear." *Marrero v. McDonnell Douglas Capital Corp.*, 200 Mich. App. 438, 442 (1993).

According to defendant, he "relied on plaintiff's assurances that plaintiff would satisfy the [] criteria" defendant had set out for plaintiff to join his business. (Dkt. 91 at 23.) In reliance on these assurances, "defendant committed himself and the LLC to acquiring more properties, and, accordingly, more obligations." (*Id.*) In response, plaintiff argues that defendant fails to identify any clear and definite promise by plaintiff or a detriment that defendant suffered. (Dkt. 94 at 6.)

Defendant may be correct that he relied on plaintiff's assertions that plaintiff would invest both capital and labor into the parties' business relationship, but he fails to state with any specificity what detriment he suffered. The only detriment defendant identifies is that he "was damaged" as a result of his reliance on plaintiff's promises. (Dkt. 91 at 23.) Absent allegations of an actual detriment, defendant cannot make out a claim for promissory estoppel.

For this reason, summary judgment is granted for plaintiff on this claim.

### iii. *Fraud*

The same legal principles discussed above with respect to plaintiff's fraud claim against defendant apply to defendant' fraud claim against plaintiff. Defendant alleges that plaintiff committed fraud because he made various representations about the capital and labor he would commit to the parties' business, but did so knowing "that those representations were false." (Dkt. 91 at 24.) Defendant cites nothing in the record to support this assertion. In the absence of such evidence, defendant has failed to create a genuine issue of material fact, and summary judgment is granted for plaintiff on this claim.

In sum, each of defendant's counterclaims fail for the reasons set forth above. Accordingly, summary judgment is granted for plaintiff on each of the counterclaims.

## IV.  Plaintiff's Motion to Amend the Complaint

During oral argument on the cross motions for summary judgment, plaintiff's counsel made an oral motion for leave to amend the complaint, and, two days later, plaintiff filed a motion for leave to amend. (Dkt. 106.) Plaintiff seeks to amend his complaint to assert new claims under the Michigan Limited Liability Company Act.

Plaintiff makes two arguments in favor of amending the complaint: amendment is necessary to "conform the pleadings to the proofs" and amendment would not be futile. (Dkt. 106 at 8.) Defendant responds by arguing that amendment would be futile, prejudicial, and was unduly delayed. (Dkt. 108.)

Federal Rule of Civil Procedure 15(a) allows a plaintiff to amend the complaint "once as a matter of course within 21 days after serving it" or with "the court's leave" which is given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a). However, motions for leave to amend are not granted "in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (quoting *Head v. Jellico Hous. Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).

"Delay by itself is not a sufficient reason to deny a motion to amend," *id.*, but, a party seeking to amend "should act with due diligence if it wants to take advantage of the Rule's liberality." *Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 853 (E.D. Mich. 2008) (quoting *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306 (6th Cir. 2000)) (internal quotations removed). "When amendment is sought at a late stage in the litigation, there is an increased burden to show justification for failing to move earlier." *Wade,* 259 F.3d at 459.

Circuit courts generally agree that "allowing amendment after the close of discovery creates significant prejudice" to the defendant, and courts routinely deny motions to amend when they are filed in the late stages of a lawsuit. *Duggins*, 195 F.3d at 834 (affirming denial of a motion to amend as the result of undue delay where the plaintiff filed the motion after the dispositive motion deadline had passed and dispositive motions were filed, and which sought to add claims based on facts known throughout the litigation); *see also Wade*, 259 F.3d at 459 (adopting the district court's explanation that a motion to amend filed after the dispositive motion deadline passed and a motion for summary judgment had been filed was unduly delayed); *Szoke v. United Parcel Serv. of Am.,*

*Inc.*, 398 F. App'x 145, 152-53 (6th Cir. 2010) (affirming denial of a motion to amend when the motion was filed "after the district court had granted summary judgment on [the] ERISA claims and while motions for summary judgment were pending on all remaning claims of the Amended Complaint").

Delay "may be excused in the case of newly discovered evidence or a change in the law." *Lipa*, 572 F. Supp. 2d at 855. But, a motion for leave to amend is prejudicial, even if the delay on its own is not undue, when the party seeking leave has been aware of the facts giving rise to its new claims throughout the litigation. *See, e.g., Szoke*, 398 F. App'x at 153 (finding prejudice when the plaintiff sought to add a new defendant at summary judgment despite learning that entity's identity in the original defendant's answer); *Wade*, 259 F.3d at 459 (affirming a district court's finding of prejudice when plaintiff brought a claim of disability discrimination before the EEOC but did not assert it in the complaint, and sought leave to add it after discovery closed); *Lipa*, 572 F. Supp. 2d at 855 (determining that an amendment brought late in litigation was prejudicial when the deficiency it sought to correct was apparent from defendant's motion to dismiss).

Here, plaintiff's motion to amend fails because it was both unduly delayed and would cause substantial prejudice to defendant. First, plaintiff's motion was unduly delayed because he brings it not just after the close of discovery, but after oral argument on the parties' cross motions for summary judgment. Moreover, this is the second time in this case plaintiff has sought leave to amend the complaint. This case has been pending for nearly two years, and plaintiff waited until the last possible minute to file this motion. Such delay triggers "an increased burden to show justification for failing to move earlier," a burden that plaintiff has not carried. *See Wade,* 259 F.3d at 459.

Plaintiff's only justification for the delay in filing this motion is that the motion seeks to "allow the pleadings to conform to the evidence." (Dkt. 106 at 6.) To support this argument, plaintiff cites to Federal Rule of Civil Procedure 15(b), "Amendments During and After Trial,"[4] which allows a "party [to] move—at any time, even after judgment—to amend the pleadings to conform them to the evidence and to raise an unpleaded issue." Fed. R. Civ. P. 15(b)(2). However, this rule allows parties to amend pleadings to conform to the evidence "[w]hen an issue not raised by the

---

[4] Rule 15(a) is the applicable rule for "Amendments Before Trial."

pleadings is *tried* by the parties' express or implied consent." *Id.* (emphasis added). In other words, a party can only invoke Rule 15(b) during and after trial, and, even then, only if an unpleaded issue was actually tried. *See Siler v. Webber*, 443 F. App'x 50, 58 (6th Cir. 2011) (holding that an attempt to amend under 15(b)(2) failed because "Plaintiffs have not shown that the § 1983 issue was 'tried by the parties' ... consent,' for the Supervisors opposed such trial" by moving for summary judgment); *McColman v. St. Clair Cty.*, 479 F. App'x 1, 6 (6th Cir. 2012) ("By its plain terms, Rule 15(b)(2) only applies to claims that are tried, and this case was disposed of on summary judgment."); *Webb v. Ky. State Univ.*, 468 F. App'x 515, 520 (6th Cir. 2012) ("Rule 15(b) contemplates amendments during and after trial.")

Rule 15(b) is not applicable in this case because this case has not yet reached trial, and the plain language of the rule limits its applicability to "Amendments During and After Trial."[5] Moreover, the

---

[5] Plaintiff relies on *Smith v. Transworld Sys., Inc.*, for the proposition that Rule 15(b)(2) applies at summary judgment as well as at trial. 953 F.2d 1025, 1030 (6th Cir. 1992). Plaintiff is correct the panel in that case applied Rule 15(b)(2) at summary judgment, but that holding is limited to the specific factual scenario presented there. In *Transworld*, the defendant raised a new affirmative defense in its motion for summary judgment, and the plaintiff, while objecting that the defense had not been pleaded, responded to it on the merits. *Id.* The court held that the plaintiff failed to

claims plaintiff seeks to add – violations of the Michigan Limited Liability Company Act – were not addressed in the adjudication of the summary judgment motions. The hearing on those motions focused only on the claims pleaded in the complaint. Because plaintiff has no valid justification for the delay in filing this motion, and the motion comes after oral argument on cross motions for summary judgment, plaintiff's delay was undue.

Second, amendment would prejudice defendant because plaintiff does not rely on any new evidence or a change in law to support his additional claims. Instead, plaintiff seeks to assert claims known to him since the outset of litigation. In the factual background section of the original complaint, plaintiff alleges defendant "filed paperwork with the State of Michigan to create a new limited liability company, Thomas Nolan, LLC, intending that it would be the entity through which the two would conduct business." (Dkt. 1 at 4.) To support this allegation,

---

"demonstrate prejudice" from the new defense, and allowed it. *Id.* The facts of this case are quite different. Plaintiff seeks to amend his complaint to add entirely new claims, not defenses, and defendant has not responded to those new claims on the merits. Furthermore, as discussed below, defendant has demonstrated that adding these claims would prejudice him. Thus, even if Rule 15(b)(2) applied at summary judgment, which it does not by its plain language, this case does not warrant its application.

plaintiff attached the Articles of Incorporation for that LLC to the complaint as Exhibit 2. (Dkt. 1-3.) Plaintiff offers no explanation for his failure to assert claims based on the Michigan Limited Liability Company Act at any point in the litigation despite having been aware of the existence of the relevant LLC from the beginning.

Accordingly, plaintiff's motion to amend, which comes "after the close of discovery[,] creates significant prejudice" to defendant. *Duggins*, 195 F.3d at 834. If the motion were granted, the parties' pending motions for summary judgment would no longer be dispositive, and they would incur the expenses additional litigation would generate. The parties have already sunk two years of time and tens of thousands of dollars into this litigation, including the receiver's fees. Plaintiff now seeks a do-over, having seen the writing on the wall at oral argument that his claims as pleaded would not succeed. It is far too late for this litigation to restart with brand new claims, and allowing it to do so would substantially prejudice defendant.

Because the motion to amend was brought with undue delay and granting it would substantially prejudice defendant, the Court need not address whether the amendment would be futile.

Accordingly, plaintiff's motion to amend is denied.

## V.    Conclusion

In sum, none of the claims asserted in this action survive summary judgment. Plaintiff's claims that depend on the existence of a partnership are dismissed because there is no dispute of fact that the parties' business relationship operated through an LLC, and an LLC cannot be a partnership as a matter of law. In addition, plaintiff's fraud claims are dismissed because there is no evidence in the record indicating that defendant intentionally or recklessly made false or misleading statements, and, even if there is such evidence, there is no evidence plaintiff relied on those statements to his detriment.

Similarly each of defendant's counterclaims are dismissed for lack of evidence. Plaintiff is entitled to summary judgment on defendant's unjust enrichment claim because there is no evidence that defendant obtained any benefit from plaintiff, nor is there evidence that retention of any benefit was inequitable. Defendant's promissory estoppel claim is unsuccessful because there is no evidence that he suffered any detriment. Defendant's fraud claim fails because there is no evidence that plaintiff intentionally or recklessly made a false statement.

Plaintiff's motion to amend the complaint is denied because the motion was brought after undue delay and granting it would substantially prejudice defendant.

IT IS SO ORDERED.

Dated: June 26, 2018        s/Judith E. Levy
Ann Arbor, Michigan       JUDITH E. LEVY
                           United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on June 26, 2018.

s/Shawna Burns
SHAWNA BURNS
Case Manager